IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEORGE FRANKLIN RATHY,      )
      )
      Petitioner,      )
      )      Civil Action No. 09-1370
      v.      )
      )      Magistrate Judge Cynthia Reed Eddy
BRIAN H. THOMPSON, Superintendent;  )
*ET AL.*,      )
      )
      Respondents.      )

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

Petitioner, George Rathy, a state prisoner incarcerated at the State Correctional Institution at Mercer, Pennsylvania has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in connection with his conviction for Aggravated Indecent Assault pursuant to a negotiated plea agreement. For the reasons set forth below, the Petition will be denied. An appropriate order follows.

### A. Relevant Factual and Procedural History

On October 13, 2004, an 11-year-old girl informed police and Armstrong County Children and Youth Services that she had had sexual intercourse with Petitioner at his residence two days earlier. She further stated that Petitioner had had sexual intercourse with her on approximately 15 occasions since she was four years old. On October 13, 2004, the state police filed numerous charges against Defendant, including Rape, Statutory Sexual Assault, Aggravated Indecent Assault and Corruption of Minors. On October 11, 2005, Petitioner entered a guilty plea to one count of Aggravated Indecent Assault and, in exchange, the other ten charges were

---

1 The parties consented to jurisdiction by a United States Magistrate Judge. *See* ECF Nos. 24 and 25. *See also* 28 U.S.C. § 636(c)(1).

1

*nolle prossed*.  On February 15, 2006, Petitioner was sentenced to a term of from 48 to 96 months in prison followed by 2 years of probation.  No direct appeal was filed.

On August 23, 2006, Petitioner filed a *pro se* petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. §9541, *et seq.*  Thereafter, counsel was appointed to represent Petitioner in his PCRA proceeding and evidentiary hearings were held on June 19, 2007 and September 17, 2007.  The PCRA Court denied relief on November 9, 2007.

Petitioner filed an appeal from this Order raising claims of ineffective assistance of counsel as follows:  1) for failing to review discovery materials with Petitioner; 2) for not investigating, filing and litigating pretrial motions; 3) for inaccurately advising Petitioner as to the sentencing guidelines, the existence of a mandatory minimum sentence, and the maximum sentence applicable to his charges; 4) for not seeking to withdraw his guilty plea; and 5) for not filing a direct appeal.  On July 15, 2008, the Superior Court affirmed the dismissal of the PCRA Petition (ECF No. 22-2).  Petitioner filed a Petition for Allowance of Appeal, which was denied by the Supreme Court of Pennsylvania on March 17, 2009.

On October 13, 2009 Petitioner filed a second PCRA petition wherein he raised approximately 40 issues, most of which were claims of ineffective assistance of counsel.  After appointing counsel, the PCRA Court dismissed the second petition on May 4, 2010 as untimely. Petitioner filed an appeal and on April 11, 2011, the Pennsylvania Superior Court affirmed the dismissal of the second PCRA petition.

Petitioner filed his Petition for a Writ of Habeas Corpus with this Court on October 13, 2009.  On October 28, 2009, the Court issued a stay, which held the matter in abeyance until January 24, 2012 while he was pursuing his second PCRA proceeding in state court.  Petitioner filed an Amended Petition in his Court on February 21, 2012 (ECF No. 8) and a Brief in Support

on April 23, 2012 (ECF No. 17). Because of the convoluted and intertwined nature of the claims set forth in these pleading, it is impossible to make an exact count of them. Nonetheless, it appears that he is raising the same claims that he raised in his first and second PCRA proceedings.

## B. Standards Governing Federal habeas Corpus Review

1. <u>Exhaustion Requirement</u>

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review. *See, e.g.*, <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989); <u>Doctor v. Walters</u>, 96 F.3d 675, 678 (3d Cir. 1996); <u>Burkett v. Love</u>, 89 F.3d 135, 137 (3d Cir. 1996). To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. <u>McCandless v. Vaughn</u>, 172 F.3d 255, 261 (3d Cir. 1999). A petitioner can "fairly present" his claim through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *Id*. At 260. Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address it. <u>Bond v. Fulcomer</u>, 864 F.2d 306, 309 (3d Cir.1989);

In addition, in order to exhaust his claims, a habeas corpus petitioner must "properly present" his claims to the state courts. In this regard, a petitioner must invoke "one complete round" of the applicable State's appellate review process, thereby giving the courts of that State "one full opportunity" to resolve any issues relevant to such claims. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (holding that a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion would be considered satisfied). The petitioner has the burden of establishing that exhaustion has been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).[2]

A petitioner shall <u>not</u> be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). Moreover, a federal court may deny a petitioner's claims on the merits notwithstanding a petitioner's failure to comply with the exhaustion requirement. 28 U.S.C. § 2254(b)(2).

2.      Procedural Default Doctrine

---

2 On May 9, 2000, the Pennsylvania Supreme Court issued In re: Exhaustion of State Remedies in Criminal and Post Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Order 218), which provides that direct criminal appellants and PCRA petitioners need not file petitions for allowance of appeal in order to exhaust all "available" state remedies for habeas corpus purposes. Order 218 applies only prospectively and it has no application to cases involving petitioners whose time for seeking discretionary review had already expired prior to May 9, 2000. Wenger v. Frank, 266 F.3d 218, 226 (3d Cir. 2001).

Whereas the doctrine of exhaustion focuses on the question of when a habeas petitioner may bring his petition, *i.e.,* only after state court remedies have been exhausted, the doctrine of procedural default focuses on whether the federal court can entertain the federal habeas petition at all. The doctrine of procedural default essentially provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule and such failure would provide an independent and adequate basis for the state courts to decline to address the federal claim on the merits, then such federal claims may not be addressed by the federal habeas court. *See, e.g.*, <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977) (failure to object at trial constituted waiver of issue under state law and hence, a procedural default under federal habeas law); <u>Francis v. Henderson</u>, 425 U.S. 536 (1976) (failure to comply with state procedure requiring challenges to composition of grand jury be made before trial constituted state waiver and, therefore, also constituted procedural default for purposes of federal habeas); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 848-49 (1999) (failure to raise issue in discretionary appeal to state supreme court constituted a procedural default for habeas purposes).

In <u>Cone v. Bell</u>, 556 U.S. 449, 129 S.Ct. 1769 (2009), the United States Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment. In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the States' interest in correcting their own mistakes is respected in all federal habeas cases. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

Cone, 129 S.Ct. at 1780 (internal quotations and citations omitted).

Federal habeas corpus review is not barred every time that a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner. Rather, a state procedural rule can preclude federal habeas corpus review only if it is "adequate" and "independent." Coleman v. Thompson, 501 U.S. 722, 750 (1991). A state procedural rule is adequate if it is "firmly established" and "consistently and regularly applied" by the State's courts. Kindler v. Horn, 542 F.3d 70, 78 (3d Cir. 2009). Specifically, the state rule must speak in unmistakable terms, and the state courts' refusal to review a petitioner's claim must be consistent with decisions in similar cases. Id. at 79. An "occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate." Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (quoting Amos v. Scott, 61 F.3d 333, 342 (5th Cir. 1995)). A state rule is adequate to preclude federal habeas corpus review if it is applied by state courts in "the vast majority of cases." Dugger v. Adams, 489 U.S. 401, 410, n. 6 (1989). A state rule of procedure is "independent" if it does not depend for its resolution on answering any federal constitutional question. Ake v. Oklahoma, 470 U.S. 68, 75 (1985). Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996).

A federal court may raise the issue of procedural default *sua sponte*. Yeatts v. Angelone, 166 F.3d 255, 261-62 (4th Cir. 1999) (citing cases). Moreover, a federal habeas court may decide that a habeas petitioner has procedurally defaulted a claim even though no state court has previously decided that the claim was procedurally barred under state law. *See, e.g.*, Carter v.

<u>Vaughn</u>, 62 F.3d 591, 595 (3d Cir. 1995) (requiring the federal district court to determine whether the petitioner's failure to appeal in the state court constituted a waiver under state procedural law that barred state courts from considering the merits and, therefore, constituted a procedural default for habeas purposes even though no state court had made a determination that petitioner's failure to appeal constituted waiver under state law).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. at 722. In order to show cause, a petitioner must prove that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986); <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 675 (3d Cir. 1996). In order to show actual prejudice, the habeas petitioner must prove not merely that the errors created a possibility of prejudice, but that they worked to his actual and substantial disadvantage. This standard essentially requires the petitioner to show he was denied fundamental fairness. <u>Werts v. Vaughn</u>, 228 F.3d 178, 193 (3d Cir. 2000) (citations and some internal quotations omitted). To establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. <u>Schlup v. Delo</u>, 513 U.S. 298, 326 (1995).

3. <u>Standard of Review for Exhausted (but not Procedurally Defaulted) Claims</u>

In describing the role of federal habeas corpus proceedings, the Supreme Court of the United States, in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings,

while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"Clearly established Federal law" should be determined as of the date of the relevant state-court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. Greene v. Fisher, ___ U.S. ___, 132 S.Ct. 38 (2011); Cullen v. Pinholster, 563 U.S. ——, 131 S.Ct. 1388, 1398 (2011). A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of facts that are materially indistinguishable from a

decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Jamison v. Klem, 544 F.3d 266, 274 (3d Cir. 2008). The state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court, Williams, 529 U.S. at 405, although district and appellate federal court decisions evaluating Supreme Court precedent may amplify such precedent, Hardcastle v. Horn, 368 F.3d 246, 256 n. 3 (3d Cir. 2004) (citing Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999)). The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8, (2002); Jamison, 544 F.3d at 274-75. Few state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision 'involves an unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Williams, 529 U.S. at 407. A showing of clear error is not sufficient. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). Nor is habeas relief available merely because the state court applied federal law erroneously or incorrectly. Thomas v. Varner, 428 F.3d 491, 497 (3d Cir. 2005); Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. ——, ——, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541

U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Harrington, 131 S. Ct. at 786–87.

The Supreme Court repeatedly has reiterated the deference that the federal courts must accord to state court decisions. *See* Felkner v. Jackson, —— U.S. ——, 131 S.Ct. 1305, 1307 (2011) ("AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."); Harrington v. Richter, ___U.S.___, 131 S.Ct. 770, 786 (2011) ("We must use habeas corpus as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."); Renico v. Lett, ___ U.S. ___, 130 S.Ct. 1855, 1862 (2010) ("whether the trial judge was right or wrong is not the pertinent question under AEDPA"); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); Lockyer v. Andrade, 538 U.S. 63, 75 (2003) ("it is not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was erroneous.").

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d

280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id*. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

### C. Proper Presentation of Petitioner's Claims in the State Courts

As stated above, it appears that Petitioner is raising in this Court the same issues he raised in his first PCRA proceeding. Because he presented these claims to all appropriate levels of the Pennsylvania Courts, I will review them on the merits in accordance with the appropriate standard set forth above.

Notwithstanding, many of the other claims Petitioner has set forth in this federal habeas proceeding appear to have been raised only in his second PCRA proceeding. The Pennsylvania Courts determined that these claims were time-barred. This category of claims is properly analyzed under the adequate and independent state ground doctrine. This doctrine bars federal habeas when a state court declined to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement. Coleman, 501 U.S. at 729–30. A federal court must not review "a question of federal law decided by a state court if the decision of that court rests on a [substantive or procedural] state law ground that is independent of the federal question and adequate to support the judgment." *Id*.

In determining whether a state court ruling provides an adequate and independent basis for precluding federal review, the federal court must consider whether: 1) the state procedural rule speaks in unmistakable terms; 2) all state appellate courts refused to review the petitioner's claim on the merits; and 3) the state court's refusal in this instance is consistent with other decisions. Doctor, 96 F.3d at 683-84. The ruling is adequate if it was "firmly established and regularly followed" at the time of the decision. Beard v. Kindler, 558 U.S. 53 (2009). The

ruling is independent if it does not rest upon federal law. Harris v. Reed, 489 U.S. 255, 260-61 (1989).

The PCRA time bar is an independent state ground because it does not require state courts to consider federal law in determining the availability of post-conviction review. Moreover, this state procedural rule also was firmly and regularly established when Petitioner filed his second PCRA petition. Thus, the PCRA time bar is an adequate and independent state ground barring federal review under the procedural default doctrine. *See* Slutzker v. Johnson, 393 F.3d 373, 379–81 (3d Cir.2004) (holding that the failure to raise a Brady violation within the statute of limitations pursuant to the PCRA qualifies as an independent and adequate state grounds to constitute a procedurally defaulted claim); Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002); Peterson v. Brennan, 196 Fed. App'x 135, 142 (3d Cir. 2006); Stevens v. Beard, Civil No. 09-3930, 2010 WL 8266292, 5 (E.D. Pa. Nov. 30, 2010); Clay v. Sobina, Civil No. 06-861, 2007 WL 950384, at *9 n. 3 (W.D. Pa. Mar. 26, 2007) ("[A]fter January 16, 1997, the State Courts consistently applied the PCRA statute of limitations in cases other than death cases ... so as to render the PCRA statute of limitations an adequate state procedural rule for purposes of the procedural default doctrine."). Consequently, all of the additional claims set forth in Petitioner's second PCRA proceeding are procedurally defaulted for purposes of federal court review. *Accord* Williams v. Patrick, Civil No. 07-776, 2012 WL 3549941, 7 (E.D. Pa. April 26, 2012) (claims set forth in time-barred second PCRA petitioner were procedurally defaulted in federal habeas proceeding); Banks v. Horn, 49 F.Supp.2d 400 (M.D. Pa. 1999) (holding that the PCRA's statute of limitations and its application by the state Courts was independent and adequate).

As stated previously, this federal court may not review a defaulted claim unless Petitioner demonstrates cause and prejudice for his default or establishes a fundamental miscarriage of

justice. *See* Martinez v. Ryan, ___ U.S. ___, 132 S. Ct. 1309, 1316 (2012); Edwards v. Carpenter, 529 U.S. 446, 451 (2000). In order to demonstrate cause, the petitioner must show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Fogg v. Phelps, 414 Fed. App'x 420, 429-30 (3d Cir. 2011) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). Examples of external impediments which have been found to constitute cause within the procedural default context include governmental interference which made compliance with the procedural rule impracticable, a showing that the factual or legal basis for a claim was not reasonably available to counsel, and ineffective assistance of counsel. For ineffective assistance of prior counsel to serve as cause to excuse a procedural default, habeas petitioners must first exhaust the ineffective assistance claim itself in state court, or show cause and prejudice for that failure to exhaust. Edwards, 529 U.S. at 451-52). To show prejudice, a petitioner must show more than a potential for prejudice, but rather that the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray, 477 U.S. at 494. If a petitioner fails to establish both prongs, the procedural default may not be excused.

In this action, Petitioner has failed to establish either the cause or the prejudice required to overcome the procedural default of the claims set forth in his second PCRA.

Even if a petitioner fails to prove cause and prejudice, a federal court may review a petitioner's procedurally defaulted claim if he can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. In Schlup v. Delo, 513 U.S. 298 (1995), the Supreme Court explained the narrow class of cases implicating a fundamental miscarriage of justice. Specifically, the Court defined the miscarriage of justice exception by holding that a habeas petitioner is required to show that "a constitutional violation has probably resulted in the

conviction of one who is actually innocent." *Id*. at 327 (quoting Murray v. Carrier, 477 U.S. at 496). The Court instructed that "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Id*. at 324. The Court further explained that "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. The petitioner thus is required to make a stronger showing than that needed to establish prejudice." *Id*. at 327.

Petitioner has failed to demonstrate that a fundamental miscarriage of justice will result from the failure of this Court to review his defaulted claims. Consequently, Petitioner's procedurally defaulted federal claims are foreclosed from habeas review.

### D. Review of Petitioner's Exhausted Claims

Petitioner's claims concern the voluntariness of his guilty plea. A defendant's plea of guilty amounts to a waiver of several of his constitutional rights. First is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second is the right to trial by jury. Third is the right to confront one's accusers. As with any waiver of a constitutional right, the Due Process Clause of the United States Constitution requires that a guilty plea be made "knowingly, voluntarily and intelligently." Boykin v. Alabama, 395 U.S. 238, 243 (1969) (internal citations omitted). The constitutional standard is one that asks whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.

Whether a plea of guilty is voluntary for purposes of the federal constitution is a question of federal law. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). To determine whether a guilty

plea represents a voluntary and intelligent choice, a reviewing court must examine the totality of the circumstances surrounding the plea. Brady v. United States, 397 U.S. 742, 749 (1970). To ensure that a plea is both knowing and voluntary, it cannot have been induced through misrepresentation or coercion, Brady, 397 U.S. at 750, the defendant must have notice of the nature of the charge(s) against him, Henderson v. Morgan, 426 U.S. 637, 645 (1976), the defendant must have an understanding of the law in relation to the specific facts at issue, McCarthy v. United States, 394 U.S. 459, 466 (1969), and the defendant must appreciate the consequences of the plea, *i.e.*, he must understand the rights he is surrendering through his plea. Once entered, a defendant does not have an absolute right to withdraw a guilty plea. United States v. Isaac, 141 F.3d 477, 485 (3d Cir. 1998). Rather, a plea of guilty entered by one fully aware of the direct consequences must stand unless induced by threats, misrepresentation, or improper promises.

It has long been held that after a defendant pleads guilty, he may only attack the voluntary and intelligent nature of his guilty plea.

> We hold that after a criminal defendant pleads guilty, on the advice of counsel, he is not automatically entitled to federal collateral relief on proof that the indicting grand jury was unconstitutionally selected. The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity. A state prisoner must, of course, prove that some constitutional infirmity occurred in the proceedings. But the inquiry does not end at that point, as the Court of Appeals apparently thought. If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases,' McMann v. Richardson, [supra, 397 U.S. at 771. Counsel's failure to evaluate properly facts giving rise to a constitutional claim, or his failure properly to inform himself of facts that would have shown the existence of a constitutional claim, might in particular fact situations meet this standard of proof. Thus, while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief.

We thus reaffirm the principle recognized in the <u>Brady</u> trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in <u>McMann</u>.

<u>Tollett v. Henderson</u>, 411 U.S. 258, 266-267 (1973).

In his first PCRA proceeding, Petitioner raised claims of ineffective assistance of trial counsel. Specifically, Petitioner claimed his counsel was ineffective as follows: 1) for failing to review discovery materials with him; 2) for not investigating, filing and litigating pretrial motions; 3) for inaccurately advising him as to the sentencing guidelines, the existence of a mandatory minimum sentence, and the maximum sentence applicable to his charges; 4) for not seeking to withdraw his guilty plea; and 5) for not filing a direct appeal.

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. <u>Strickland</u>, 466 U.S. at 687. The first prong of the <u>Strickland</u> test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as "counsel" guaranteed by the Sixth Amendment. <u>Strickland</u>, 466 U.S. at 688. The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair and unreliable. <u>Strickland</u>, 466 U.S. at 689. A defendant is not entitled to relief unless he makes both showings. *Id*. at 687. Pennsylvania applies the same test for ineffective assistance of counsel as the Strickland test used in federal courts. <u>Werts v. Vaughn</u>, 228 F.3d 178, 203 (3d Cir. 2000).

The two-part Strickland test applies to ineffective assistance of counsel claims arising out the plea process. Hill v. Lockhart, 474 U.S. 52, 57 (1985). The first prong may be satisfied where the plea offer is never communicated to the client or where the plea information is communicated so incorrectly that it undermines the ability of the client to make an intelligent decision whether or not to accept the offer. United States v. Day, 969 F.2d 39, 42-44 (3d Cir. 1992). To satisfy the second "prejudice" prong, a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill, 474 U.S. at 58-59. A federal habeas petitioner seeking to withdraw a guilty plea based upon ineffective assistance of counsel must show that counsel's advise was not within the range of competence demanded by attorneys in criminal cases; only serious derelictions on the part of counsel entitle a petitioner to relief. Siers v. Ryan, 773 F.2d 37 (3d Cir. 1985).

In analyzing Petitioner's claims under the two-part test announced in Strickland, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings. The question of effectiveness of counsel under Strickland is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations. Berryman, 100 F.3d 1089, 1095 (3d Cir. 1996). In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which the presumption applies. Id. Likewise, a state court's determination that a decision was a tactical one is a question of fact. Id.

The Supreme Court recently reiterated the difficulty of prevailing on an ineffectiveness claim on habeas review.

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether

17

defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (internal quotations and citations omitted). The Court further instructed:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under §2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S.Ct. at 788 (internal quotations and citations omitted).

1.  Failure to Review Discovery

The first claim raised in Petitioner's PCRA petition was his assertion that his counsel rendered ineffective assistance by failing to engage and review appropriate discovery with him. In its review of this claim, the Superior Court held as follows.

> Discovery Materials. Appellant argues counsel failed to review the discovery materials with him and this failure led counsel to advise Appellant he had no defenses. He further contends counsel's conduct in this regard led to an involuntary guilty plea.
>
> Trial counsel's testimony indicated she did review the materials with Appellant. Appellant denied that counsel did so except for showing him a DNA report. The PCRA court found Appellant was not credible and, instead, believed trial counsel's testimony on this issue.
>
> Appellant's argument on this appeal is that counsel was not believable because of various contradictions in her testimony and because of impeachment to which she was subject during cross examination in the PCRA hearing. Thus, he pursues a credibility argument. Credibility and the resolution of conflicts in the testimony were for the PCRA court to determine. Because the record supports the court's determinations, we are bound by them and we will not disturb the court's order.

Sup.Ct.Op. dated July 15, 2008 (ECF No. 22-2, p. 4).

In proceedings pursuant to 28 U.S.C. § 2254, a state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Questions of witness credibility are considered issues of fact to which this presumption applies. *See* Thompson v. Keohane, 516 U.S. 99, 111-12 (1995) (holding that matters that turn on the appraisal of witness credibility or demeanor clearly are factual thus warranting a presumption of correctness on habeas corpus review). Under the statutory standards governing the granting of habeas relief, a petitioner carries the burden of rebutting a state court's factual findings by clear and convincing evidence. *See* Miller–El v. Cockrell, 537 U.S. 322, 340 (2003). It is not enough to decide that the petitioner has advanced a plausible alternative to the factual findings of the state court. *See* Martini v. Hendricks, 348 F.3d 360, 368 (3d Cir. 2003). Silence in the record is insufficient to overcome the presumption. *See* Washington v. Sobina, 509 F.3d 613, 621 (3d Cir. 2007).

My independent review of the state court record satisfies me that the factual determinations by the state courts are "fairly supported." Moreover, Petitioner did not meet his burden to rebut the state court's findings as he introduced nothing persuasive on this issue. Finally, he has failed to show that the state court determination is contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Consequently, he is not entitled to habeas corpus relief as to this claim.

2.     <u>Failure to Investigate, File and Litigate Pretrial Motions</u>

Petitioner next claims that his counsel failed to investigate, file and litigate pretrial motions. In his Brief in support of his PCRA motion, he claimed that trial counsel failed to challenge the DNA report, failed to consider issues of competency and taint with regard to the victim and failed to pursue any suppression issues with regard to either his statement or the evidence obtained from his residence. Petitioner exhausted this claim through his PCRA proceeding where the Superior Court made the following determination.

> <u>Pretrial Motions</u>. Appellant's brief asserts trial counsel should have investigated, filed and litigated pretrial issues regarding suppression of evidence, competence of the victim, degradation of DNA evidence, and the fact that the victim's allegations may have been somehow tainted. Appellant does not present factual and legal analysis demonstrating these pretrial issues had arguable merit. Accordingly, Appellant cannot prevail on this claim of ineffectiveness.

ECF No. 22-2, p. 4).

While trial counsel has a duty to make reasonable investigations, there are countless ways to provide effective assistance in any given case. <u>Harrington v. Richter</u>, ___ U.S. ___, 131 S. Ct. 770, 779 (2011) ("Rare are the situations in which the latitude counsel enjoys will be limited to any one technique or approach."). There comes a point where a defense attorney will reasonably decide that one strategy is in order, thus making other particular investigations unnecessary.

Strickland, 466 U.S. 691.  Thus, as a general matter, the decision not to explore certain aspects is questioned only when counsel fails to conduct any pretrial investigation.  United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989) (citing cases).

In evaluating the reasonableness of a defense attorney's investigation, the information provided by the defendant is very important.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.  In particular, what investigation decisions are reasonable depends critically on such information.  For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether.  And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.  In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Strickland, 466 U.S. at 691.  Strategic decisions made by an attorney after a thorough investigation of the relevant legal and factual backgrounds to a case are virtually unchallengeable.  Id.

Petitioner has failed to show that the Superior Court's determination is contrary to, or an unreasonable application of, controlling Supreme Court precedent.  Accordingly, he is not entitled to relief as to this claim.

3.    Failure to Properly Advise Petitioner as to Sentencing.

Also in his first PCRA proceeding, Petitioner claimed ineffective assistance of counsel for inaccurately advising him as to the sentencing guidelines, the existence of a mandatory minimum sentence, and the maximum sentence applicable to his charges.

To satisfy the due process requirement, which mandates that a guilty plea be voluntarily given, a defendant must be advised of the <u>direct</u> consequences of the plea. <u>Brady</u>, 397 U.S. at 755. A "direct" consequence is one that has a definite, immediate, and largely automatic effect. <u>Parry v. Rosemeyer</u>, 64 F.3d 110, 113 (3d Cir. 1995). Direct consequences include the maximum prison term and fine for the offense charged. *Id*. at 114. In addition, a criminal defense attorney must provide correct advise about the potential risks of adverse immigration consequences. <u>Padilla v. Kentucky</u>, ___ U.S. ___, 130 S.Ct. 1473, 1483 (2010).

> The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. . . . We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

<u>Brady</u>, 397 U.S. at 757 (internal citations omitted).

The PCRA Court made the following determinations with respect to this claim.

> In the instant case, Yost failed to accurately advise Defendant of the statutory minimum sentence for the crime to which Defendant was pleading guilty. By her own admission, Yost advised Defendant that upon conviction for 18 Pa. C. S. §3125(a)(7), Defendant would receive a mandatory minimum sentence of 2 years pursuant to 42 Pa. C. S. §9118(a). However, at the time that Defendant allegedly committed his crimes, there was no mandatory minimum sentence. It appears that both Yost and the District Attorney mistakenly believed that the sentencing guidelines which had had gone into effect on November 30, 2004 applied to Defendant. Because Defendant's last charged act occurred in October 2004, however, the new sentence guidelines with a mandatory minimum sentence did not apply.

> Yost's erroneous advice was not within the wide range of professionally competent assistance demanded by the Sixth Amendment, and was devoid of any reasonable basis designed to effectuate Defendant's interest. Nonetheless, the Court does not believe that this mistake prejudiced Defendant in any way.

Defendant's real complaint is that he did not receive the sentence of 2½ years to 5 years that he was allegedly promised. According to Defendant, it was this "promise" that induced him to plead guilty, not Yost's description of statutory minimum or maximum sentences.

Moreover, given the damning DNA report, the plea agreement of 60 months to 120 months in return for the *nolle prosse* of a rape charge and numerous other charges was an excellent outcome for Defendant. Defendant was facing considerably more jail time had he been convicted of rape and the other charges.

In this case there is absolutely no evidence that Yost's error was a substantial factor in Defendant's decision to accept a guilty plea offer of 60 months to 120 months in prison. Moreover, the record indicates that the guilty plea was a good outcome for Defendant under the circumstances. Because Defendant has failed to show that he was prejudiced by plea counsel's error, this claim has no merit.

Next, we turn to the claim that Yost mistakenly advised Defendant that the 50-month minimum sentence proposed in the plea agreement was within the standard range of punishment applicable to the aggravated sexual assault charge. Again, as discussed at length above, there is absolutely no evidence that this advice is what motivated Defendant to plead guilty. Moreover, the Court ultimately did sentence Defendant to a minimum of 48 months in prison which was within the standard minimum range of 36 to 48 months. Because Defendant has failed to prove that he was prejudiced by Yost's assertion that the proposed minimum sentence of 60 months was within the standard range, this claim is also dismissed.

We next address Defendant's assertion that he relied on a promise from Yost of 2½ to 5 years in prison in exchange for his agreement to plead guilty. There is absolutely no credible evidence to support Defendant's assertion. To the contrary, the record shows that Defendant saw the proposed sentencing recommendation of 60 to 120 months on the guilty plea agreement that he signed on October 11, 2006. In addition, Defendant heard this plea agreement orally described at the plea proceeding. Defendant never objected to the recommended sentence of 60 to 120 months despite being given numerous opportunities to do so.

Furthermore, at his sentencing on January 24, 2006, Defendant informed the Court that he had seen the presentence investigation report, which contained a copy of the plea agreement providing for a sentence of 60 to 120 months, and the probation officer's recommendation that Defendant be sentenced to a term of 48 to 96 months in prison. Defendant once again did not object to the 60 to 120-month proposed sentence. Defendant also did not object to it at his resentencing on February 15, 2006.

Given all of the above evidence, Defendant's claim that he was offered 2½ to 5 years in prison to plead guilty, and that he relied upon that specific offer when he pled guilty, is incredible. The Court finds that Yost never told Defendant he had been offered 2½ to 5 years in jail. The Court also finds that Defendant was never told by anyone that he was pleading guilty in exchange for a recommendation of 2½ to 5 years in prison. Because Defendant has failed to prove any the elements required to make out a claim of ineffective assistance of counsel, the claim is meritless.

PCRA Opinion (internal citations and footnotes omitted) (ECF No. 22-3, pp. 31-35).

The Superior Court affirmed this determination as follows.

Advice Re: Sentence. Appellant raises three complaints about the advice counsel provided concerning sentencing. He asserts counsel improperly advised him of the following: (1) that the initially recommended sentence of sixty to one hundred twenty months was within the standard sentence range when, in fact, it was not; (2) that a mandatory minimum of two and one half years applied to this case when it did not; and (3) that the maximum allowable term was twenty years when it was actually ten. Appellant contends counsel's wrong advice on these three issues caused his to plea to be involuntary.

As to Appellant's first complaint, he has failed to demonstrate prejudice. More specifically, the minimum incarceration term ultimately imposed on Appellant (*i.e.*, forty-eight months) was, in fact, within the standard sentence range. Thus, Appellant has not shown he suffered any harm from counsel's advice concerning the initial plea offer of sixty to one hundred twenty months.

With regard to his second complaint, the record indicates trial counsel did wrongly advise Appellant there was a mandatory minimum term of two and one half years. There was plainly merit to advising Appellant correctly, and the record reveals no reasonable basis for counsel to provide incorrect advice. However, Appellant cites to no point in the PCRA hearing where he presented evidence that the outcome of the plea proceedings would have been different had counsel advised him correctly. More specifically, Appellant did not testify, and thus did not prove, that he pled guilty because of the wrong advice about the mandatory minimum or that he would not have pled guilty had he been advised appropriately. Accordingly, Appellant has, again, not shown prejudice.[1]

Note 1: Appellant testified he thought the plea agreement was for a period of two and one half to five years and he wanted to withdraw his plea when he was not sentenced in accordance with his expectation. Thus, as recognized by the PCRA court, Appellant's evidence was relevant to a claim that he did not receive the minimum sentence he expected. The plea and sentencing

transcripts make clear Appellant was advised on the record first
that he would be sentenced to a minimum term of sixty months
and, after a revision of the agreement, that he would receive a
minimum term of forty-eight months. Thus, Appellant could not
have obtained relief on a theory that he thought he was going to
receive a minimum of two and one half years.

Appellant's complaint concerning counsel's advice about the maximum
sentence also must fail. First, Appellant has not articulated how any alleged
wrong advice about the maximum possible term prejudiced him. Second, during
the guilty plea hearing, the court advised Appellant of the maximum possible
incarceration of ten years. Appellant indicated on the record he understood the
maximum. He cannot now claim he was unaware of the maximum. In sum, the
record shows that Appellant knew the maximum sentence allowed by law, that he
knew what sentence he was going to receive and that his sentence was in the
standard range of the guidelines. He simply has not shown counsel was
ineffective with regard to sentencing. Accordingly, he is entitled to no relief on
this issue.

Sup.Ct.Op. (internal citations omitted) (ECF No. 22-2, pp. 5-7).

Again, Petitioner has failed to show that the Superior Court's determination is contrary

to, or an unreasonable application of, controlling Supreme Court precedent. Accordingly, he is

not entitled to relief as to this claim.

4.     Failure to Withdraw Guilty Plea

Next, Petitioner claims that trial counsel rendered ineffective assistance by failing to file

a motion to withdraw his guilty plea. Once entered, a defendant does not have an absolute right

to withdraw a guilty plea. Mabry v. Johnson, 467 U.S. 504, 509 (1984). In its review of this

claim, the PCRA Court made the following determination.

Defendant also claims that he asked Yost to withdraw his guilty plea and
that she failed to do so. There is no credible evidence that Defendant asked Yost
to withdraw his plea. Yost testified that he did not. Furthermore, Defendant, who
the record shows was no stranger to the legal system, had plenty of opportunities
to inform the Court that he wished to withdraw his plea, but never did.

At his sentencing hearing on January 24, 2000, Defendant represented to
the Court that the plea bargain as recited accurately represented the plea
agreement reached by Yost and the District Attorney. He indicated absolutely no

> dissatisfaction with it. Instead, he proceeded to discuss at some length the amendment to the caption of his case that he wished the Court to grant in the case. At Defendant's resentencing on February 15, 2006, the Court again asked Defendant directly if he wanted to say anything and Defendant replied, "No, sir." Given Defendant's silence at three separate proceedings and his overall lack of credibility, the Court finds that Defendant is not believable on this issue. Because Defendant has failed to prove that the claim has merit, it is dismissed.

PCRA Op. (ECF No. 22-3, pp. 35-36) (internal citations omitted). The Superior Court upheld this determination.

> Plea Withdrawal. At the PCRA hearing, trial counsel testified Appellant did not ask her to withdraw his guilty plea. Appellant testified he did make that request, both orally and in writing. The PCRA court rejected Appellant's testimony and found counsel credible. We cannot upset this credibility determination as the record supports it. Thus, Appellant's claim fails.

Sup.Ct.Op. (ECF No. 22-2, p. 7).

Because Petitioner was seeking to withdraw his plea after his sentence had been imposed, and because Judge Valasek found that Petitioner had not instructed Yost to withdraw his guilty plea prior to his sentencing, Petitioner was required to demonstrate "manifest injustice" in order to prevail on his motion to withdraw. *See* 16A Pennsylvania Criminal Practice § 25:6 at 460 (West 2011) (collecting cases) ("Since allowing the withdrawal of a guilty plea after sentencing would allow the defendant to use a guilty plea as a sentence testing device, a defendant must show prejudice on the order of manifest injustice before a guilty plea may be withdrawn after sentencing."). Petitioner has failed to make any such showing in the instant action. Nor has he shown that the state courts findings are unsupported by the record. Accordingly, Petitioner is not entitled to relief as to this claim.

5.    Failure to File Appeal

Finally, Petitioner claims that his trial counsel rendered ineffective assistance by failing to file an appeal. The Supreme Court has imposed specific requirements on trial counsel to ensure that a defendant's right to a direct appeal is not foreclosed by his counsel's inactions. Specifically,

trial counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either: 1) that a rational defendant would want to appeal; or 2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). In making this determination, courts must take into account all the information counsel knew or should have known. *Id.* Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal. *Id.*

In its review of this claim, the Superior Court made the following determination.

Direct Appeal. Also during the PCRA hearing, Appellant introduced a letter dated March 5, 2006, indicating he wanted to file a direct appeal. The envelope in which the letter was sent to counsel is postmarked March 17, 2006, the date on which the direct appeal period expired. Furthermore, trial counsel testified she received this letter on March 21, 2006.

To prevail on his claim that counsel failed to follow his request to file a direct appeal, Appellant must show he instructed counsel to do so before the appeal deadline. As the evidence supports the PCRA court's finding that Appellant failed to make this showing, we deny relief on this claim.

Sup.Ct.Op. (ECF No. 22-2, pp. 7-8) (internal citation omitted).

Again, Petitioner has failed to show that the Superior Court's determination is contrary to, or an unreasonable application of, controlling Supreme Court precedent. Accordingly, he is not entitled to relief as to this claim.

### E. Certificate of Appealability

28 U.S.C. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right.

28 U.S.C. § 2253(c)(2).  Here, the record fails to show a violation of Petitioner's constitutional rights.  Accordingly, a certificate of appealability will be denied.  An appropriate order follows.

**AND NOW**, this 7th day of December, 2012:

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

By the Court:


/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

George Franklin Rathy
GN-1226
SRCF Mercer
801 Butler Pike
Mercer, PA 16137